UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                 609-989-0478
United States Bankruptcy Judge                                                  609-989-2259 Fax

September 13, 2011

Bruce D. Gordon, Esq.
Bruce D. Gordon LLC
2050 Center Avenue, Suite 560
Fort Lee, New Jersey 07024
Attorneys for Plaintiff, Columbia Bank

Hugh A. Keffer, Esq.
McGuire, Popkin & Topas
105 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Attorney for Defendant, Cornerstone Bank

                    Re:    Thomas Begley and Patricia Begley
                           Case No. 10-43222 (MBK)
                           Adv. Proc. No. 11-01611 (MBK)

Counselors:

   This matter is before the Court upon the competing motions for summary judgment of Columbia Bank ("Columbia") and Cornerstone Bank ("Cornerstone"). The Court has heard oral arguments and has reviewed the submissions filed in the above-referenced matter. The Court issues the following ruling:

   **I.     Jurisdiction**

   The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court, dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §§

157(b)(A), (B), (K) and (O). The statutory predicate for the relief sought herein is N.J. STAT. § 46:1-1, *et seq.* (*i.e.,* the New Jersey Recording Act). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

## II.    Background

Columbia and Cornerstone filed competing motions for summary judgment (the "Motions"), each asserting priority with respect to secured claims against property owned by Thomas and Patricia Begley (the "Debtors") and located at 1019B East Brigantine Blvd., Brigantine, New Jersey (the "Property"). In short, Cornerstone asserts a secured claim in second position based on a mortgage it obtained on the Property (the "Cornerstone Mortgage").[2] Columbia argues that because the Cornerstone Mortgage wrongfully identified TNP, LLC as mortgagor and owner of the Property, Columbia was not on notice of the Cornerstone Mortgage when it loaned funds to the Debtors and took a subsequent mortgage on the same property (the "Columbia Mortgage"). Thus, Columbia asserts that its claim on the Columbia Mortgage is senior to Cornerstone's claim with respect to the Property. To the contrary, Cornerstone argues that Columbia was on constructive and/or inquiry notice of the Cornerstone Mortgage and, therefore, cannot trump Cornerstone's claim in terms of priority.

In the Court's view, the pertinent issues raised by the parties in their respective pleadings are as follows: (i) whether Columbia was on constructive and/or inquiry notice of the Cornerstone Mortgage, (ii) whether it is necessary or appropriate to address the validity of the

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusion of law constitutes finding of fact, they are adopted as such.

[2] All parties concede the proper recordation of a first mortgage against the Property held by Popular Financial Services, LLC, which was subsequently assigned to The Bank of New York Mellon (f/k/a The Bank of New York), as successor to JP Morgan Chase Bank, as trustee for the benefit of certain certificate holders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2004-4.

Cornerstone Mortgage in the Court's determination of priority of the competing claims, and (iii) assuming Columbia was on constructive and/or inquiry notice, whether the actions of Cornerstone give rise to a situation where Cornerstone's claim should be equitably subordinated to Columbia's claim pursuant to Bankruptcy Code § 510(c). On August 15, 2011, the Court conducted a hearing on the Motions. For the reasons set forth below, the Motions are denied without prejudice.

### III.    Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the

---

[3] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in Guiliano v. Coy (In re Coy):

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine issue" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S.

at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.

IV. DISCUSSION

A. Constructive/Inquiry Notice

The Court finds that the facts presented herein demonstrate that Columbia was on constructive notice of the defective Cornerstone Mortgage and, at a minimum, that Columbia should have made further inquiry with respect to recordation and the validity of the Cornerstone Mortgage. "Constructive notice refers to 'what a purchaser of debtor's property would have discovered from inspecting the public record in the office of the recorder of deeds as well as from inquiring of the person in possession of the property or of anyone else the purchaser has reason to believe has knowledge of facts which might affect title to the property.'" United Bank, Inc. v. Howard (In re Howard), 2011 U.S. Dist. LEXIS 12612, *21-22 (W.D. Pa. Feb 9, 2011) (citing In re Lauver, 372 B.R. 751, 760 (Bankr. W.D. Pa. 2007)); see also Sidle v. Kaufman, 345 Pa. 549, 557 (1942) ("It is well settled that purchasers and mortgagees of real estate are affected not only by matters of which they had actual knowledge and by what appeared in the office of the recorder of deeds and in the various courts of record whose territorial jurisdiction embraced the land in dispute, but as well 'by what they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the title.'").

The facts presented in the instant matter support the Court's determination that Columbia was on constructive and/or inquiry notice of the Cornerstone Mortgage. Most significantly, the

Cornerstone Mortgage was indexed against the Debtors' name, which placed Columbia on notice that TNP, LLC (the entity listed as mortgagee on the Property) may not have been the true owner of the Property. Further, the Cornerstone Mortgage describes the exact same property as found in the Debtors' deed, including the street address, tax map reference, and legal description. Accordingly, the Court finds that there were enough "red flags" whereby Columbia should have made further inquiry with respect to the validity of the Cornerstone Mortgage. Indeed, because the Cornerstone Mortgage was indexed against the Debtors' name, Columbia could have (and should have) inquired of the Debtors as to the status of the Cornerstone Mortgage.

### B. Validity of the Cornerstone Mortgage

Counsel for Columbia suggests that even if Columbia was deemed to be on constructive notice of the Cornerstone Mortgage, the Cornerstone Mortgage is invalid based on the fact that the mortgage was not given by the Debtors, but rather an entity owned by the Debtors, namely TNP, LLC. As a result, Columbia argues that its mortgage has priority over the allegedly invalid Cornerstone Mortgage, regardless of whether it was on constructive notice. While Columbia may be able to demonstrate that the Cornerstone Mortgage is invalid, Columbia cannot have it both ways – that is, Columbia cannot be on constructive notice of the Cornerstone Mortgage and then complain that the Cornerstone Mortgage is invalid.

The Court finds these facts akin to a trustee's right to utilize his or her avoidance powers under Bankruptcy Code § 544 to invalidate a mortgage. As noted by several courts in the Third Circuit, "[t]he trustee is barred from using the avoidance powers 'where there are matters of record giving constructive notice of a competing interest.'" United Bank, Inc. v. Howard (In re Howard), 2011 U.S. Dist. LEXIS 12612, *21-22 (W.D. Pa. Feb 9, 2011) (citing Standard Bank v. O'Connor (In re O'Connor), 432 B.R. 175, 178 (Bankr. W.D. Pa. 2010)); see also Stewart v.

Shubert, 325 Fed. Appx. 82, 85 (3d Cir. 2009) (Noting that the trustee was on constructive notice that the property was owned by debtor's mother and therefore "may not avoid that interest under § 544(a)(3)"); Graffen v. Philadelphia, Water Revenue Bureau, 149 B.R. 90, 92 (E.D. Pa. 19992) (citing McCannon v. Marston, 679 F.2d 13, 16 (3rd Cir. 1982) ("[T]rustee's strong-arm powers did not relieve the trustee of making inquiries into prior claims on the property, where any other subsequent purchaser would be on notice of such a duty to inquire")).

Thus, similar to a trustee's inability to invalidate a mortgage if the trustee is deemed to be on constructive notice, the Court finds that it would be inequitable to allow Columbia to dispute the validity of the Cornerstone Mortgage when it was on constructive notice of that mortgage. Accordingly, the Court concludes that the validity of the Cornerstone Mortgage is not determinative in this priority battle.

### C.  Equitable Subordination

Although the Court finds that Columbia was on constructive notice of the Cornerstone Mortgage, issues of fact exist as to whether Cornerstone's actions may give rise to a claim for equitable subordination. As articulated by the Third Circuit, Bankruptcy Code § 510(c) allows a court to subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim by utilizing its equitable powers:

> Section 510(c) simply "codified" existing judge-made doctrine, and development of the substantive standards for equitable subordination has been left to the courts. This court has described equitable subordination as a "remedial rather than penal" doctrine designed "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." Citicorp Venture Capital, Ltd.v. Comm. of Creditors Holding Unsecured Claims, 323 F.3d 228, 233-34 (3d Cir. 2003) (Citicorp II).
>
> As outlined in the influential case of Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 699-700 (5th Cir. 1977), "three

7

>     conditions must be satisfied before exercise of the power of equitable subordination is appropriate:" (1) "[t]he claimant must have engaged in some type of inequitable conduct;" (2) "[t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;" and (3) "[e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." See also United States v. Noland, 517 U.S. 535, 538-39, 116 S. Ct. 1524, 134 L. Ed. 2d 748 (1996) (citations omitted).

Shubert v. Lucent Techs. Inc (In re Winstar Communs., Inc.), 554 F.3d 382, 411-412 (3d Cir. Del. 2009). Furthermore, "[i]n considering a request for equitable subordination, courts must look to the totality of the circumstances." In re Wesley, 2011 Bankr. LEXIS 3058, 12-13 (Bankr. D.N.J. Aug. 10, 2011).

In this case, Columbia argues that Cornerstone discovered that the Cornerstone Mortgage was defective when Cornerstone took subsequent mortgages on the Debtors' new residence located at 1 Woodsfield Court, Medford, New Jersey. Columbia notes that while the original mortgage on the Debtors' new residence listed TNP, LLC as the mortgagor, a replacement mortgage on the same property, taken in November 2007, corrected the error of title ownership by changing the mortgagor from TNP, LLC to the Debtors' name. Thus, Columbia asserts that Cornerstone chose not to disclose the title ownership defect in the Cornerstone Mortgage, despite Cornerstone's knowledge of such defect well before Columbia executed the Columbia Mortgage in October 2008.

In light of Columbia's allegations, the Court finds that this case is not yet ripe for summary judgment, as additional facts are necessary in order to make a determination as to whether Cornerstone's actions require Cornerstone's claim to be equitably subordinated to the claim of Columbia. Allowing the parties to further develop the factual record will allow the Court to address the totality of the circumstances, as well as to protect the integrity of the

recording system. See <u>Island Venture Assocs. v. N.J. Dep't of Envtl. Prot.</u>, 179 N.J. 485, 492 (N.J. 2004) ("[A]bsent any unusual equity the stability of titles and conveyancing requires the judiciary to follow that course that will best support and maintain the integrity of the recording system").

### V.    CONCLUSION

In light of the foregoing, the Court will deny the Motions without prejudice pending further discovery and a more fully developed factual record. The Court will enter appropriate orders.

*[signature]*
Honorable Michael B. Kaplan
United States Bankruptcy Judge